18 So.2d 174

COCKRELL et al. v. MORAN CORPORA-
TION OF THE SOUTH.

No. 37233.

April 17, 1944.

See, also, 204 La. 405, 15 So.2d 805.

Herold, Cousin & Herold, of Shreveport, and Plauche & Plauche, of Lake Charles, for appellants-respondents.

John R. Perez, of New Orleans, for plaintiff-in-rule and appellee.

ROGERS, Justice.

The only matter presented on this appeal for the consideration of the court is the amount which should be allowed as an attorney's fee to a curator ad hoc.

The case was previously before the court on a rule taken by the curator ad hoc to compel the adverse parties to supplement the transcript at their expense by the addition of typewritten copies of the records in a number of lawsuits which were introduced in evidence by the curator ad hoc over the objection of his opponents. In overruling the motion to supplement the transcript in this proceeding, the court made a brief statement of the case which we reproduce. This statement is as follows:

"Ernest Cockrell and others sued a Texas corporation, called The Moran Corporation of the South, and its local attorney, for slander of title to certain mineral royalty interests in a large area of land in Plaquemines Parish. In response to a supplemental petition of the plaintiffs the judge appointed a curator ad hoc to represent the corporation. Thereafter the suit was dismissed on the plaintiffs' motion; and subsequently the lawyer who had been appointed curator ad hoc demanded of the corporation a fee of $2,500 for his services. The corporation, considering the demand excessive, refused to pay the fee; whereupon the lawyer proceeded by rule to have the fee fixed and assessed as costs of court. After a trial of the rule the judge allowed the curator ad hoc a fee of $500. The defendants in the rule—who were the plaintiffs in the main suit—appealed from the judgment allowing the curator ad hoc the fee of $500; and he, in answer to the appeal, asked for an increase of the amount of the judgment to $2,500." Cockrell v. Moran Corporation, 204 La. 405, 15 So.2d 805, 806.

The suit brought in Plaquemines Parish by Cockrell and others against the Moran Corporation of the South and its local attorney was one of a series of suits in which plaintiffs and defendants, the Mt. Forest Fur Farms, a Michigan corporation, the Mt. Forest Fur Farms of America, Inc., a Delaware corporation, and other persons and bodies corporate were involved.

The evidence produced on the trial of the rule to fix the fee of the curator ad hoc consisted of the pleadings in the case, the testimony of the plaintiff in rule, his correspondence with the attorneys and various parties in interest and the records in the seven lawsuits referred to in the opinion rendered by this court on the motion of appellee to compel the appellants to supplement the transcript by copies of the records in the suits.

Plaintiffs, as the owners and possessors of certain mineral and royalty rights in and to approximately 52,500 acres of land in Plaquemines Parish, based their suit on a certain transfer, duly recorded, by Mt. Forest Fur Farms of America to the Moran Corporation of a one-tenth of its undivided interest in and to all of the oil, gas, sulphur and other minerals of every kind and character in or under the land, and upon public and continuous adverse claim of the

Moran Corporation and its attorney to whom it, in turn, had transferred an interest in the minerals, that they had an interest in the royalties which the Gulf Refining Company had contracted to pay to Cockrell. Plaintiffs alleged that the defendants had no agent for service of process within the State. And plaintiffs prayed that the defendants be cited, the Moran Corporation through the Secretary of State, and for judgment quieting them in the possession of the mineral rights and enjoining the defendants from claiming any portion of the royalties or mineral rights reserved to Cockrell.

After service was made on the Moran Corporation through the Secretary of State, its local attorney filed an exception to the citation on the ground that exceptor was a foreign corporation and that the citation on the corporation, through the Secretary of State, was improperly made and illegal and was therefore without effect. Upon the filing of the exception, the plaintiffs, without however admitting the correctness of its allegations, applied to Judge Debaillon, who was temporarily acting as judge of the Twenty-Fifth Judicial District Court, for the appointment of a curator ad hoc to represent the Moran Corporation in the proceedings and to be cited and served with copies of the original and supplemental petitions. Plaintiffs also prayed "that after the lapse of the legal delays and due proceedings had, there be judgment in favor of plaintiffs, as prayed for in their original petition." The order signed by Judge Debaillon reads as follows: "Let John R. Perez, Attorney, be and he is hereby appointed as curator ad hoc to represent the defendant, the Moran Corporation of the South, in these proceedings; let the above and foregoing supplemental and amended petition be allowed and filed, and service made upon the curator as prayed for herein."

The order was signed on November 2, 1940, and Perez was served with notice of his appointment as curator ad hoc and with a copy of the supplemental petition on November 7, 1940.

Upon the receipt of the notice of his appointment as curator ad hoc to represent the Moran Corporation in the suit brought by Ernest Cockrell and other persons against the Moran Corporation and another, Perez accepted the trust and immediately communicated with the local attorney of the Moran Corporation, who resided in New Orleans, and with the attorney of the plaintiffs, who resided in Lake Charles. On November 12, 1940, the local attorney of the Moran Corporation, who had been absent from New Orleans, immediately telephoned Perez on his return to the city advising him that the United States District Court for the Eastern District of Michigan had under consideration the merits of a rule for an injunction taken by the trustee of the Mt. Forest Fur Farms in certain reorganization proceedings brought under Sec. 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, against Cockrell and his coplaintiffs and the Moran Corporation and its co-defendant in the suit instituted in Plaquemines Parish. The following day, on November 13, 1940, the local attorney for the Moran Corporation advised Perez by letter he had just been informed by telegram that the Judge of the United States

District Court at Detroit had rendered judgment in favor of the Mt. Forest Fur Farms and had issued an injunction against all the parties litigant in the suit in Plaquemines Parish. The concluding paragraph of this letter reads as follows: "Inasmuch, therefore, as my client The Moran Corporation of the South, and myself are enjoined from any further proceedings in this matter, you are advised that we can authorize no further steps to be taken."

As we have stated, Perez was served on November 7, 1940, with a notice of his appointment as curator ad hoc. On the next day, November 8, 1940, he wrote plaintiffs' attorney at Lake Charles, informing him that he had been served with the notice of appointment and with the supplemental petition, but not with a copy of the original petition, and that he was sending a copy of the letter to the clerk of court who had apparently overlooked delivering a copy of the original petition to the sheriff in order that it might be served on the curator. A carbon copy of this letter was also sent to the co-plaintiffs of Cockrell, who are also attorneys residing in Shreveport.

Perez' letter to plaintiffs' Lake Charles attorney remained unanswered until November 25, 1940. In the meantime, faced· with the necessity of taking some action Perez, on November 15, 1940, appeared in the District Court of Plaquemines Parish and formally accepted in writing his appointment as curator ad hoc, filed his oath, and a pleading in which he set forth the facts which we have hereinabove related. On November 19, 1940, a copy of the interlocutory injunction issued against Cockrell and his co-plaintiffs and the Moran

Corporation and its co-defendant by the United States District Court in Michigan prohibiting the defendants in injunction from further proceeding in the suit in Plaquemines Parish, pending the further orders of the court, was filed in the clerk's office in the District Court for the Parish of Plaquemines. Subsequently, to-wit, on November 25, 1940, answering a letter of Perez of November 8, 1940, the Lake Charles attorney for Cockrell and his co-plaintiffs, informed Perez of the injunction issued by the Federal Court in Detroit and that an appeal had been taken from the judgment, pending which the matter would have to remain in statu quo. The writer further stated: "As soon as there are any developments, I shall communicate with you further."

The testimony of Perez, which is not contradicted, shows that, as a copy of the original petition had not been served on him, shortly after his appointment he traveled from New Orleans, where he maintains his office, to Pointe-a-la-Hache, the parish seat, for the purpose of examining the record in order to ascertain what was involved in the suit. In his examination of the record Perez noted particularly the original petition and six exhibits attached thereto which had not been served on him. Pointe-a-la-Hache is situated approximately fifty miles from New Orleans, necessitating a trip by Perez of one hundred miles which, with the time expended in examining the record, consumed an entire day. As a matter of fact, Perez was not served with citation and a copy of the original petition until January 14, 1942, or about fourteen months after he had been served with

the notice of his appointment as curator ad hoc.

On January 28, 1942, Perez received a notice from the Clerk of Court that the exceptions to the citation filed by the Moran Corporation and its co-defendant were fixed for trial on February 19, 1942. In response to the notice he went to Pointe-a-la-Hache at the time mentioned. As he entered the court room for the purpose of attending the hearing, the case was called and continued by Judge Henry L. Himel, acting as temporary judge, who stated he had received letters from the plaintiffs' attorney and from the local attorney of the Moran Corporation asking that the matter be passed. Perez thereupon informed Judge Himel that he was appearing as curator ad hoc for the Moran Corporation, but if the attorneys of record had requested that the matter be passed, "it was all right with him." Judge Himel then ordered the matter passed without date. On returning to his office in New Orleans, Perez wrote plaintiffs' attorneys at Lake Charles and Shreveport advising them of what had occurred and that pursuant to their request Judge Himel had continued the case without date.

The record indicates that the service of the citation and original petition on Perez on January 14, 1942, was made at the instance of plaintiffs' Lake Charles attorney. This appears from a letter dated January 12, 1942, addressed by Perez to plaintiffs' attorney. The letter shows that a few days before Perez was served with the citation and copy of the original petition, the son of plaintiffs' Lake Charles attorney, who

is himself an attorney, telephoned the office of Perez from the Monteleone Hotel in New Orleans and in the absence of Perez left word with his secretary that he would appreciate it if Perez would see that service was made as soon as possible and that if there were any questions he would like to ask to call him at the hotel or his father at Lake Charles. Perez was not able to reach the son of plaintiffs' attorney at the Monteleone Hotel and he therefore wrote plaintiffs' attorney the letter of February 2, 1942. In this letter Perez informed plaintiffs' attorney that he had received his message relative to the service of the citation and original petition and that if there was anything plaintiffs' attorney wished to let him know in connection with the matter he would appreciate hearing from him. Perez also stated in the letter that the local attorney of the Moran Corporation, whom he happpened to meet on the street, had stated that what was served on him about January 13, 1942 "was some inconsequential rule"—probably a rule to dismiss the proceeding. Perez asked plaintiffs' attorney to inform him as to the present status of the case and if, as he understood from the local attorney of the Moran Corporation, the litigation had terminated, to "please advise me in your opinion, what I should do with reference to compensation for my services, as curator ad hoc; to whom it should be directed; who should pay it; and what amount I should ask for."

Under date of February 7, 1942, plaintiffs' attorney wrote Perez, the body of the letter reading as follows:

"Re: Cockrell vs. The Moran Corporation.

"I beg to acknowledge receipt of your letter of the 2nd inst., in regard to your curatorship in the above matter. The exceptions to the citation filed on behalf of the defendants are the only matters that are to be taken up on February 19 in connection with the above case. Of course, we have other matters to take up in connection with another case, but you are not interested therein.

"In regard to your fees, I beg to state that the plaintiffs are eminently solvent, and you will have no trouble in collecting your curator's fees in due course.

"I do not presume that you will file any pleadings between now and the 19th, but if you should, please forward us and our associates in Shreveport a copy thereof."

It was not necessary for Perez, after he was cited and served with a copy of the original petition, to promptly file any pleading on behalf of the Moran Corporation as the district court of Plaquemines Parish was not in session and nothing could take place to the prejudice of the Moran Corporation. Plaintiffs' attorney did not answer the letter of Perez dated February 25, 1942, relative to the continuance of the hearing on the exceptions leveled at the citation served on the Secretary of State. Nor did he communicate further with Perez until April 30, 1942 when he answered a letter written him by Perez on April 28, 1942. In his letter Perez stated that he had been advised the matter would be settled by compromise during that week if it had not already been compromised, and he requested plaintiffs' attorney to see that his fee was paid when the matter was settled. Perez also sent a copy of this letter to plaintiffs' attorney in Shreveport. In his reply to the letter of Perez of April 20, 1942, plaintiffs' Lake Charles attorney stated he noted that a copy of the letter had been sent to plaintiffs' Shreveport attorney and that he was writing that day to plaintiffs' Shreveport attorney to ascertain whether he wished him "to handle that part of the case, or whether he will do so himself" and advising Perez that as soon as he heard from plaintiffs' Shreveport attorney he would write him. On May 15, 1942, Perez wrote plaintiffs' Lake Charles attorney stating he had heard nothing further from him since he had written plaintiffs' Shreveport attorney and requesting that he send him a check for what in his judgment he felt was a proper fee, if the case had been settled. On May 16, 1942, plaintiffs' Lake Charles attorney wrote Perez advising him that the entire matter was in process of settlement and that as soon as the settlement was consummated Perez would no doubt receive a check for the amount of his fee as curator. The writer also stated that he was sending the letter of Perez to plaintiffs' Shreveport attorney who was handling the settlement for all parties concerned.

On June 11, 1942, Perez wrote plaintiffs' Lake Charles attorney that he had heard nothing from plaintiffs' Shreveport attorney with reference to the fee due him as curator ad hoc and he asked plaintiffs' Lake Charles attorney to trace the matter in order that he might get the fee paid and "get the file off" his desk. Copy of this letter was sent to plaintiffs' Shreveport attorney. On June 15, 1942, Perez received a reply to his letter from plaintiffs' Shreveport attor-

ney, advising him that negotiations were in progress towards the settlement of the entire case and that a petition was presently before the United States District Court at Detroit, sitting as a court of bankruptcy, to authorize the trustee of Mt. Forest Fur Farms to make a compromise. It was further stated in the letter that the matter would be passed upon on June 30 and that if the trustee secured the necessary authority the compromise judgment would be entered in the Parish of Plaquemines pursuant to the compromise agreement, but if the authority was not obtained the writer presumed that the case would have to proceed to judgment. The letter concluded with these words: "I shall see that you are properly compensated when the matter is wound up, and trust that you will agree with me that this is proper." Hearing nothing further from plaintiffs' attorneys, Perez, on August 17, 1942, wrote plaintiffs' Shreveport attorney, sending a copy of the letter to plaintiffs' Lake Charles attorney, stating he understood from the secretary of the local attorney of the Moran Corporation, who was on his vacation, that the matter had been settled. Perez closed his letter with these words: "I will appreciate hearing from you, if this is correct."

As a matter of fact the compromise agreement was executed on June 30, 1942, and a copy thereof was placed of record in the district court for the Parish of Plaquemines on August 4, 1942, when a formal judgment was rendered by Judge Himel approving the compromise agreement and making it the judgment of the court. Subsequently, Ernest Cockrell and his co-plaintiffs filed a motion in the district court for

the Parish of Plaquemines asking that the suit against the Moran Corporation and its co-defendant be dismissed "as of voluntary non-suit." In compliance with the motion, Judge Oliver S. Livaudais, who was then acting as district judge, entered an order dismissing the cause. This order was signed on August 12, 1942 and filed in the district court on August 13, 1942.

In reply to the letter of Perez of August 17, 1942, plaintiffs' Shreveport attorney wrote Perez on August 20, 1942, advising him that the case had been finally disposed of by dismissal as of non-suit pursuant to the compromise agreement and that he would appreciate Perez sending in his bill for his fee as curator ad hoc through plaintiffs' Lake Charles attorney. A copy of this letter was sent to the latter. On receipt of the letter of plaintiffs' Shreveport attorney, Perez wrote plaintiffs' Lake Charles attorney advising him of the contents of the letter. The letter of Perez reads in part, as follows:

"I never know just what bill to render, as fee, when I am requested by a brother attorney to act in a matter of this kind.

"I was appointed by Judge Debaillon, who was acting Judge in the 25th Judicial District at the time, and Judge Debaillon advised me that you had suggested my appointment as curator ad hoc.

"As you very well know, fees are not usually charged based on the amount of work performed and effort expended only, but there is also taken into consideration the size and amount of the matter involved.

"I understand this to be a sizeable matter.

"It occurs to me that the curator ad hoc's fee should not be less than $250.00 and probably $500.00 would be a reasonable charge.

"I am enclosing to you two of my bill forms, leaving it to your judgment, in making same up in duplicate, as to whom same should be addressed and what amount you feel should be filled in, based on my thought as expressed above."

Perez concluded his letter by stating that he would appreciate the plaintiffs' Lake Charles attorney attending to the matter for him and getting it to plaintiffs' Shreveport attorney, dropping him a note to let him know what he did.

Not receiving a reply to his letter of August 20, 1942, Perez on September 11, 1942, wrote plaintiffs' attorney to disregard and return him that letter. On October 22, 1942, still not hearing from plaintiffs' attorneys, Perez wrote plaintiffs' Lake Charles attorney. In his letter he referred to the correspondence he had with plaintiffs' Shreveport attorney and reviewed the entire question of the fee due him as curator ad hoc. He also referred to the fact that plaintiffs' attorney had not complied with the request contained in his letter of September 11, 1942, to disregard and return his letter of August 20, 1942. The concluding paragraph of the letter of Perez reads as follows:

"Let's see whether we cannot bring this thing to a head, so that if it is impossible to have Mr. Cockrell amicably settle this on a basis satisfactory to me, I can pro- ceed with rule against all parties in interest, as well as all attorneys in the matter of the suit entitled Ernest Cockrell et al. v. Moran Corporation of the South, No. 1603 of the 25th Judicial District Court for Plaquemines Parish, La. Please, 'S–W' try to get this finished, and let me hear from you promptly."

The letter of Perez of October 22, 1942, appears to be the last of the series of letters exchanged between him and the attorneys representing the plaintiffs. On November 12, 1942, Perez filed his rule in the district court for the Parish of Plaquemines to fix his fee as curator ad hoc at the sum of $2,500 and to tax the same as costs of suit. In their lengthy answer to the rule, defendants admitted that the plaintiff in rule had faithfully discharged the duties required of him as curator ad hoc and that he was entitled to a fee therefor but they averred that the services rendered by the plaintiff in rule were merely nominal and that his fee should not exceed $100. But no tender was made of that or any other amount to the plaintiff in rule.

The record shows that in 1909 Perez was graduated from the College of Law of Louisiana State University with the degree of Bachelor of Laws and that he was immediately admitted to practice. Since his admission to the Bar, or for a period of approximately thirty-three years, he has engaged continuously in the practice of civil law in the state and federal courts. He has devoted all of his thirty-three years of practice to land and mineral matters and particularly to mineral matters in the last ten or fifteen years. He is one of the few lawyers practicing in the Parish of Plaque-

mines who has had more than thirty years of actual legal experience. Obviously, it is because he was possessed of those qualifications that plaintiffs' attorney requested Judge Debaillon to appoint Perez as a curator ad hoc to represent the Moran Corporation in the suit which involved plaintiffs' valuable mineral interests in extensive oil and sulphur lands situated in the Parish of Plaquemines.

The suit brought by Cockrell and his co-plaintiffs against the Moran Corporation and its co-defendant in the district court for the Parish of Plaquemines was instituted while the proceedings brought in the United States District Court at Detroit under Sec. 77B of the National Bankruptcy Act to reorganize Mt. Forest Fur Farms was being vigorously contested by the interested parties and was clearly considered to be an important factor in the strategy employed by Cockrell and his associates by which they hoped to establish in the Louisiana courts an indefeasible title to enormously valuable mineral rights in Louisiana lands.

The appointment of Perez as curator ad hoc to represent the defendant, the Moran Corporation, was never revoked, nor was it intended to be revoked in the event the compromise agreement was not effected. The purpose of plaintiffs in having Perez appointed as curator ad hoc for the Moran Corporation was to bring that defendant into court and their attorney caused the citation and original petition to be served on Perez fourteen months after he was appointed curator ad hoc in order to establish the foundation of their action. The only reason that Perez was not called upon to file any pleading as curator ad hoc for the Moran Corporation after he was served with the citation and copy of the original petition was because the compromise agreement was effected, resulting in the discontinuance of plaintiffs' suit.

■ We are not impressed by the contention of defendants in rule that the services rendered by the curator ad hoc were merely nominal in character and that his responsibility was insignificant. It is clear that Cockrell and his co-plaintiffs filed this suit in Plaquemines Parish either to press the suit to a final judgment or to use as a basis for effecting the compromise which was ultimately entered into. The fact that plaintiffs' attorney asked for the appointment of a curator ad hoc possessing the professional experience and qualifications of Perez indicates he expected that the services the curator ad hoc would be called upon to render would be of a highly specialized character and would involve considerable responsibility.

Plaintiffs make much of the fact that at the time he was served with plaintiffs' supplemental petition and notice of appointment, Perez knew that the Moran Corporation was already represented by Mr. Heller, its local attorney, and that Heller was actively opposing plaintiffs' suit on behalf of his client. Plaintiffs do not pretend that Heller, who was merely the local counsel of the Moran Corporation, was thereby constituted as its agent for the service of process and that the service of citation and petition upon him would have been sufficient to bring the corporation into court. The fact plaintiffs knew that Heller was not clothed with such authority is shown by the

further fact that they did not attempt to cite the Moran Corporation through Heller, but first through the Secretary of State and secondly through Perez as curator ad hoc. It is not correct to say that Heller was actively opposing the suit on behalf of the Moran Corporation at the time Perez was appointed as curator ad hoc to represent that corporation. He had done nothing more at that time than to file an exception on behalf of the Moran Corporation attacking the validity of the citation which had been served on the Secretary of State. As a matter of fact, Heller in his letter of November 13, 1940, advised Perez that neither he nor his client could authorize any further steps to be taken in the matter. On receipt of this information, Perez could do nothing other than that which he did in order to protect the interests of the corporation he was appointed to represent. From the plaintiffs' standpoint, his appointment was regular, and it was only through service of citation and petition on him that the Moran Corporation could be properly subjected to the jurisdiction of the district court for the Parish of Plaquemines. Since, up to the time the compromise agreement was entered into and the suit was dismissed, Heller, as the local counsel of the Moran Corporation, had refused to assume any responsibility with respect to plaintiffs' action so far as it was based on the citation served on Perez, it will not do to say that there was no duty or responsibility resting upon Perez to defend the suit.

■ Perez, admittedly, was appointed as curator ad hoc under the authority of Article 116 of the Code of Practice. This article provides that an absentee may be represented by an attorney at law appointed to defend the suit. There is no provision in the article and no absolute rule fixing the amount of the fee of the attorney appointed under the article. The court in fixing the fee of an attorney at law who has been appointed the curator ad hoc in a particular case must be guided by the facts of that case, always having in view that the services are essentially professional in their nature.

■ Among the elements to be considered in determining the amount due as attorney's fees in such cases regard must be had as to the responsibility incurred, the amount involved or in controversy, the extent and character of the labor performed, the legal experience and knowledge of the attorney involved, and the ability of the debtor to pay.

Guided by the above elements and upon the facts disclosed by the record, we do not find that the fee of $500 awarded by the judge of the district court to the curator ad hoc as an attorney's fee in this case is excessive. We think it does full justice between the parties and that the amount of the fee should not be increased as claimed by appellee in his answer to the appeal.

For the reasons assigned the judgment appealed from is affirmed.

HAMITER, J., dissents and assigns reasons.

ODOM, J., absent.

O'NIELL, C. J., does not take part.

HAMITER, Justice (dissenting).

It is my belief that a fee of $150 is ample and proper for the curator ad hoc in this controversy, in view of the circumstances shown by the record and hereafter discussed.

As the majority opinion points out, the nonresident defendant, Moran Corporation of the South, was at all times represented by regular counsel (Isaac S. Heller). It was he who filed on behalf of the corporation an exception to the citation served on the Secretary of State. And it was because of that filing, and only by reason thereof, that the plaintiff, through a supplemental petition, requested the appointment of the curator ad hoc on whom service of process might be made. The purpose of requesting and obtaining the appointment was to assure the court's jurisdiction of the non-resident corporation as expeditiously as possible.

I agree that in determining the fee to which a curator ad hoc is entitled, consideration, ordinarily, is to be given to a number of elements, including "the responsibility incurred, the amount involved or in controversy, the extent and character of the labor performed, the legal experience and knowledge of the attorney involved, and the ability of the debtor to pay." First and of most importance among these is the matter of responsibility.

In the instant case, slight responsibility, if any, devolved upon Mr. Perez, the curator ad hoc; the non-resident corporation, for which he was appointed, was already represented in this state and in this litigation by other able counsel, this to his knowledge as is clearly shown by the correspondence that passed between him and defendant's regular attorney, Mr. Heller. If the burden and responsibility of defending the suit had been upon him, unquestionably there would be necessary and appropriate the giving of due consideration to the amount involved as well as the other mentioned elements, including the undisputed above-the-average ability and experience of the appointee; and he, in my opinion, would be entitled to a fee much larger than that awarded by the trial court and approved here. But such is not the case.

The services performed by the curator ad hoc consisted principally of drafting and filing on November 15, 1940, his first and only pleading and of writing the numerous letters discussed in detail in the majority opinion. In that pleading he made reference to the service on him of the notice of his appointment and of a copy of plaintiff's supplemental petition, and he declared that "he accepts the appointment and files herewith the usual curator's oath"; further he recounted certain correspondence and telephone calls occurring up to that time, regarding one of which calls he alleged: "That as of date November 8, 1940, he (Perez) telephoned Isaac S. Heller, attorney at law, whom he knew to be the regular retained counsel for the Moran Corporation of the South, when he was advised Mr. Heller was out of the city and would return on Wednesday, November 13, 1940; that on Wednesday, November 13, 1940, Mr. Heller telephoned the undersigned, advising that he had just returned from Detroit, Michigan, * * *".

Of course, Mr. Perez testified that he made two trips to Pointe-a-la-Hache in the

interest of the litigation (this is disputed by plaintiff's counsel), but I can not appreciate the necessity of his making either of them. The first, so he claims, occurred shortly after his appointment and before service of the original petition on him; obviously, he was not then properly in court, because the citation that he had received, accompanying which was only the supplemental petition, was defective. The second trip was made on February 19, 1942, on his being notified by the Clerk of Court that the exception to the citation (previously filed by Mr. Heller the regular attorney for Moran Corporation) were fixed for trial on that date; however, prior thereto Mr. Perez had received from Mr. Heller a letter dated February 5, 1942, which said:

"The matter of our exception to the citation has been fixed for trial, and I propose to argue it, if and when it comes up. For this reason, I don't believe there is anything for you to do at this time. I will take the position, of course, that the Moran Corporation is not obligated to you in any respect. This is a position I don't like to take, but after all, I am representing them, and not you, although I would much prefer the latter. Best regards.

"Sincerely yours,
"(Sgd.) Isaac S. Heller"

If before the filing of the instant rule plaintiff's counsel had tendered to Mr. Perez a reasonable fee, in response to his numerous requests therefor, and he had refused to accept it, then I think that payment to him of something less than $100 would be appropriate in view of the above shown circumstances. However, they failed in their duty of attempting to make an amica-

ble settlement with him; and, as a consequence, they should be condemned to pay an amount approximating that which I suggest ($150), together with all costs of the rule.

For these reasons, I respectfully dissent.